UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
MAUREEN ENNIS, PATRICIA DEVIN,                  )
PATRICIA SCHULTZ, and LUIS LEON,                )
and all others similarly situated,              )
                                                )
            Plaintiffs,                          )
                                                )
        v.                                       )        Civil Action No. 08-11799-PBS
                                                )
ARAMARK SPORTS, LLC and THE                     )
MASSACHUSETTS CONVENTION                         )
CENTER AUTHORITY                                 )
                                                )
            Defendants.                          )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARAMARK SPORTS, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs, food and beverage servers at two Boston convention centers, allege that their employer, Defendant ARAMARK Sports, LLC ("ARAMARK"), has violated MASS. GEN. LAWS ch. 149 § 152A, the Massachusetts Tips Statute (the "Tips Statute"), by failing to distribute to them administrative fees, which Plaintiffs mischaracterize as "service charges and gratuities" under the Tips Statute (Count I).  Plaintiffs also allege that this failure to distribute administrative fees renders ARAMARK liable under Massachusetts common law for claims of quantum meruit/unjust enrichment (Count II), breach of implied contract (Count III), and interference with contractual and/or advantageous relations (Count IV).  Because Plaintiffs fail to state any cause of action upon which relief can be granted, the Court should grant ARAMARK's motion, and dismiss Plaintiffs' case in its entirety.

## I.   Introduction

Plaintiffs bring this action against ARAMARK and the Massachusetts Convention Center Authority ("MCCA"), contending that an administrative fee which ARAMARK earns from its

customers at the MCCA, contrary to its clear and express designation, is actually a "service charge" which must be distributed to ARAMARK's service employees pursuant to the Tips Statute. The administrative fee is billed directly by ARAMARK to customers contracting for food and beverage services for events at the Hynes Convention Center ("Hynes") and the Boston Convention & Exhibition Center ("BCEC"). These bills also designate on their face "Admin. Fee" and further explain that the **"[a]dministrative fee does not represent a service charge, gratuity or tip for the benefit of service employees."** *See* Ex. A (emphasis added).

Plaintiffs' complaint fails because the safe harbor contained in subsection (d) of the 2004 Tips Statute completely shelters ARAMARK from liability in this case. Specifically, it plainly permits an employer to charge an "administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge . . . ." MASS. GEN. LAWS ch. 149, § 152A (d) (2004) (emphasis added). Because ARAMARK, at all times pertinent, has properly designated and explained its administrative fee to its customers, in satisfaction of the disclosure requirements of the safe harbor provision, it has no obligation to distribute its administrative fees to Plaintiffs. Accordingly, this Court should dismiss Plaintiffs' claim brought under the Tips Statute, as well as their common law claims premised upon the same facts and preempted by the Tips Statute, in their entirety.

## II.    Applicable Legal Standards

ARAMARK moves to dismiss this action pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim for a relief. A motion brought pursuant to FED.R.CIV.P. 12(b)(6) is evaluated by "taking as true the well-pleaded facts contained in the complaint and drawing all reasonable inferences therefrom in the plaintiff's favor." *Phoung-Luc v. Wyndham Mgmt. Corp.,* 496 F.3d 85, 88 (1st Cir. 2007) (quoting *Garrett v. Tandy Corp.*, 295 F.3d 94, 97 (1st Cir. 2002)).

Dismissal is appropriate if the complaint fails to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory'." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005); *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 320 (1st Cir. 2008) (dismissal appropriate "'if the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider:

> not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice. *Cruz v. Melecio,* 204 F.3d 14, 21 (1st Cir.2000); *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16-17 (1st Cir.1998); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir.1996). The first part of this rule is consistent with the axiom that a writing is the best evidence of its contents. *See, e.g., Beddall,* 137 F.3d at 16-17. The second part of this rule is consistent with the hoary tenet that a court "may look to matters of public record in deciding a Rule 12(b)(6) motion." *Boateng v. InterAmerican Univ.,* 210 F.3d 56, 60 (1st Cir. 2000).

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003); *see also Andrew Robinson Int'l Inc. v. Hartford Fire Ins. Co.*, No. 08-1255, 2008 WL 4838129, at *2 (1st Cir Nov. 10, 2008) (citing *In re Colonial Mortgage Bankers* 324 F.3d at 14.).[1] Thus the Court may

---

[1] The *Beddall* court stated:

> When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6). *See Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988); *see also Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 1997) (explaining that courts may consider "[u]ndisputed documents alleged or referenced in the complaint" in deciding a motion to dismiss); *see generally* FED.R.CIV.P. 10 (c) (stating that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof"). While a plaintiff only is obliged

take judicial notice of the "patrons' bills . . . as described in [the] complaint", Compl. ¶ 6, in deciding this motion to dismiss pursuant to Rule 12(b)(6).  The Court may also consider in deciding this motion the collective bargaining agreement governing the employment relationship between ARAMARK and its service employees, the authenticity of which is not in dispute.  The Court may take judicial notice of that agreement as a matter fairly incorporated within the complaint based on the complaint allegations that employees are paid an hourly wage and not the gratuity or service charge billed to patrons or left to patrons.  Compl ¶ 9.

In addition to applying these considerations to the facts before the Court, the Court also is called upon to consider the law to be applied.  A federal court sitting in diversity must borrow the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).  As federal jurisdiction over this action is predicated upon diversity and the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2005) ("CAFA"), Massachusetts law "supplies the substantive rules of decision . . . ."  *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir. 1996) (citing *Erie R.R. Co.,* 304 U.S. at 78); *see Braud v. Transp. Serv. Co.,* 445 F.3d 801, 803 (5th Cir. 2006) ("CAFA broadens diversity jurisdiction for certain qualifying class actions.").[2]

### III.   Pertinent Facts

The pertinent facts which the Court may consider in deciding this Motion to Dismiss are

---

to make provable allegations, the court's inquiry into the viability of those allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which *by her own admission* the allegations rest. Any other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint. We doubt that the drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases, would have countenanced such a result.

137 F.3d at 17.

[2] Plaintiffs brought this action in state court on October 1, 2008.  ARAMARK timely filed a notice of removal on October 27, 2008, based on diversity jurisdiction under 28 U.S.C. § 1332(a) and jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2005) ("CAFA").  Defendant MCCA filed a consent to removal on October 31, 2008 and an answer on November 5, 2008.

straightforward.  MCCA contracts with ARAMARK to provide food and beverage services for events at the Hynes Convention Center and BCEC in Boston, Massachusetts.  Compl. ¶ 6. Customers who have arranged contractually with ARAMARK for food or beverage services at events at either convention center are billed on a banquet event order form for the particular food and beverage services ordered.  On that bill, ARAMARK includes an administrative fee, calculated as a percentage of the contracted-for food and beverage services ordered.  That bill is to be signed by the customer.  *See* Ex. A.  This administrative fee, billed by ARAMARK directly to customers for food and beverage services ordered and paid by the customers to ARAMARK, is the subject of this action.  *See* Compl. ¶¶ 6, 7.

These bills designate the fee at issue as an "Admin Fee", and set out the amount of the "Admin Fee" as part of the "Billing" summary and above the "Contract Total".  *See* Ex. A. These bills also state on their face that the **"[a]dministrative fee does not represent a service charge, gratuity or tip for the benefit of service employees."**  *Id.* (emphasis added).[3]  All of the administrative fees billed contained on banquet event orders to customers that are at issue in this lawsuit occurred after the most recent revision of the Massachusetts Tips Statute in 2004.

The employees of ARAMARK providing food and beverage services at Hynes and BCEC are unionized.  Their wages and other compensation are bargained for and set forth in the collective bargaining agreement between their union and ARAMARK.  The collective

---

[3]As noted above, the Court may take judicial notice of the "patrons' bills…as described in [the] complaint" in deciding this motion to dismiss.  *See supra* Note 1.  Moreover this assertion of fact in the pleading that the bills are the operative documents is a judicial admission binding throughout the course of this case.  *See Schott Motorcycle Supply, Inc. v. Am. Honda Mot. Co., Inc.,* 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985)); *see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." ); *cf Murphy v. Ford Motor Co.,* 170 F.R.D. 82, 85 (D. Mass. 1997)  (observing that "[a] litigant may not defeat summary judgment by submitting an affidavit that, without plausible explanation, contradicts his own prior deposition testimony" and that "the contradictory matter in the affidavit must be stricken") (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4-5 (1st Cir. 1994)).

bargaining agreement provides in pertinent part that ARAMARK's service employees are paid the higher "non-tipped" shift rate consistent with the understanding that these are "non-tipped" employees and that tips are not a component of the employees' pay.   *See* Ex. B pp; MASS. GEN. LAWS Ch. 151 § 7 (2004) (setting forth state minimum wage for tipped and non-tipped employees). The collective bargaining agreement does not provide for these service employees to receive any part of their wages in the form of tips, gratuities, or service charges.  *See* Ex. B.

### IV.   <u>Argument</u>

#### A.   ARAMARK satisfies the disclosure requirements in the Massachusetts Tips Statute regarding its administrative fee and is therefore protected by the statute's safe harbor from liability pertaining to service charges and tips.

Plaintiffs allege in the first count of their Complaint that ARAMARK's failure to distribute the administrative fee billed by ARAMARK to customers violates the Massachusetts Tips Statute, MASS. GEN. LAWS Ch. 149 § 152A (2004).  The most recent revision of the Act in 2004 is the law that applies here because all of ARAMARK's administrative fees which Plaintiffs place at issue in this case were billed to and paid by customers to ARAMARK after this revision.  Because ARAMARK is protected by the Tips Statute's safe harbor for its properly designated administrative fee, Plaintiffs fail to state a claim for relief under that statute and this Court should accordingly dismiss Count I of the Complaint.

#### (1)   The Massachusetts Tips Statute provides a safe harbor against liability for properly-disclosed administrative fees.

The Massachusetts Tips Statute provides in subsection (b) that no "employer or other person shall retain or distribute in a manner inconsistent with this section any tip or service charge given directly to the employer or person."  *See* MASS. GEN. LAWS Ch. 149 § 152A(b) (2004).  Subsection (d) of the Statute further provides that "[i]f an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total

proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees." MASS. GEN. LAWS Ch. 149 § 152A(d) (2004).   These two provisions generally impose an obligation to distribute to service employees all "service charges" and "tips" as defined in the Statute, that are received by an employer for the benefit of those employees.

However, 152A subsection (d) creates a statutory safe harbor from these obligations for certain types of fees imposed on a customer by an employer such as the administrative fees in this case.   Subsection (d) provides in pertinent part:

> Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation <u>or</u> written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders.

MASS. GEN. LAWS Ch. 149 § 152A (d) (2004) (emphasis added.)

Here, ARAMARK's bills designate on their face "Admin. Fee" <u>and</u> further explain that the "[a]dministrative fee does not represent a service charge, gratuity or tip for the benefit of service employees."   *See* Ex. A (emphasis added).   Thus, given the plain language of the safe harbor provision of the Tips Statute, it is clear that ARAMARK has no obligation to distribute its administrative fees, and is sheltered from liability.

For these reasons, as well as those discussed below, the Court should find as a matter of law that this statutory provision creates a safe harbor for ARAMARK's administrative fees billed to its customers at the Hynes Convention Center and BCEC, and therefore that ARAMARK is protected from any liability under MASS. GEN. LAWS ch. 149 § 152A (2004) as to its billed administrative fees.

(2)    **By virtue of the unambiguous language of the Statute, the Massachusetts Legislature intended to create a safe harbor for certain disclosed fees, and ARAMARK has satisfied the requirements for protection under that safe harbor.**

In addition to finding that the plain language of the safe harbor provision logically shelters ARAMARK from liability here, to the extent that the Court finds it necessary to look further, the relevant rules of statutory interpretation also support ARAMARK's position.

As noted above, Massachusetts law supplies the substantive rules of decision for deciding this Motion to Dismiss.   "In the first instance, this means that the federal court looks to pronouncements of the highest court of the state. When that court has not spoken directly to an issue, the federal court must make an informed prophecy as to the state court's likely stance." *Andrew Robinson Int'l*, No. 08-1255 2008 WL 4838129, at *2 (1st Cir. Nov. 10, 2008) (internal citation omitted); *see Fed. Deposit Ins. Corp. v. Ogden Corp.*, 202 F. 3d 454, (1st Cir. 2000). (in absence of a definitive ruling by the highest state court   a federal court takes "a predictive approach").

In *Blinzler,* the First Circuit explained:

> In its barest essence, borrowing state law demands nothing more than interpreting and applying the rules of substantive law enunciated by the state's highest judicial authority, or, on questions to which that tribunal has not responded, making an informed prophecy of what the court would do in the same situation. *See Moores v. Greenberg,* 834 F.2d 1105, 1112 (1st Cir.1987).   In the latter instance, we seek guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law. *See Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734-35 (1st Cir. 1990); *Kathios v. General Motors Corp.,* 862 F.2d 944, 949 (1st Cir. 1988). As long as these signposts are legible, our task is to ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ. *See Moores,* 834 F.2d at 1107 n. 3.

81 F.3d at 1151 (footnote omitted).   Despite the absence of any decision from the Massachusetts

Supreme Judicial Court interpreting the Massachusetts Tips Statute, according to the appropriate guidance in interpreting the Statute "'the course [the] state court[ ] would take is reasonably clear'" so as to allow this Court to find that there is a safe harbor that protects ARAMARK from liability under the Tips Statute in this case. *See Univ. of P.R.,* 7 F.3d 270 (1st Cir. 1993) (alterations in original) (quoting *Porter v. Nutter,* 913 F.2d 37, 41 n.4 (1st Cir. 1990)).

According to Massachusetts law, a statute is to be interpreted according to the intent of the Legislature. *Commonwealth v. Galvin*, 446 N.E. 2d 391, 393 (Mass. 1983).   Moreover the language of a statute "should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan v. Town of Brookline*, 758 N.E.2d 110, 115 (Mass. 2001).  However "the primary source of insight into the intent of the Legislature is the language of the statute." *Int'l Fid. Ins. Co. v. Wilson*, 387, 443 N.E.2d 1308, 1316 (Mass. 1983), and thus where that language is clear and unambiguous, as it is here, it is conclusive as to the intent of the Legislature. *See Comm'r of Corr. v. Superior Court Dep't of the Trial Court*, 842 N.E.2d 926, 928 (Mass. 2006); *Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court,* 787 N.E.2d 1032, 1035 (Mass. 2003); *Simon v. State Exam'rs of Electricians*, 479 N.E.2d 649, 651 (Mass. 1985).   Although the Massachusetts Supreme Judicial Court has not decided any cases involving MASS. GEN. LAWS Ch. 149 § 152A (2004), the intent of the Legislature is clear from the plain language of the Tips Statute and should be given that effect.

Plaintiffs appear to be asserting that the administrative fee set forth on ARAMARK's bills to customers somehow falls within the Tips Statute's definition of a "service charge" under Section 152A(a).[4]   Attempting to construe ARAMARK's administrative fee as a "service

---

[4] A "service charge" is defined as: (1) "a fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender, including any fee designated as a service charge, tip, gratuity", or

charge" under the Tips Statute, however, is contrary to the basic canons of statutory construction and therefore cannot be the appropriate interpretation of Massachusetts substantive law.

In determining whether ARAMARK's administrative fee is a "service charge", accepted principles of statutory construction require that the definition of "service charge" within subsection (a) of Section 152A be read with reference to the whole Act of which it is a part. *See Dominguez v. Liberty Mut. Ins. Co.*, 706 N.E. 2d 647, 649 (Mass. 1999). Thus, in order to constitute a service charge covered by the distribution obligations in 152A, the fee at issue not only must satisfy the meaning of "service charge" in subsection (a) but also must not be prescribed by any other subsection, as subsection (a) plainly states that "[a]s used in this section, the following words, unless a different meaning is required by the context or is specifically prescribed, shall have the following meanings . . . ." MASS. GEN. LAWS Ch. 149 § 152A(b) (2004). In subsection (d) of the Tips Statute, a meaning different from a "service charge" is specifically prescribed for ARAMARK's administrative fee at issue. *See* MASS. GEN. LAWS Ch. 149 § 152A(d) (2004). Thus, upon consideration of the Act as a whole, ARAMARK's administrative fee cannot be held to mean a "service charge," and Plaintiffs' claim - - entirely dependent upon that administrative fee constituting a "service charge" under the statute - - must be rejected.

The canon of purposive construction also requires a court to interpret a statute so as to best carry out its statutory purposes, and "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Rapanos v. United States* 547 U.S. 715, 752 (2006). Thus, enforcing the Tips Statute's safe harbor by limiting the scope of that statute, so as to exclude from coverage fees designated or described in accordance with the safe harbor

---

(2) "a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or in addition to, a tip." *See* MASS. GEN. LAWS Ch. 149 § 152A(a) (2004).

requirements, is in furtherance of and not inconsistent with the purposes of the Tips Statute as reflected in its plain and unambiguous language. The existence of analogous disclosure-based safe harbor provisions demonstrates that a statutory safe harbor is entirely compatible with other statutory objectives. *See, e.g.* Federal Truth in Lending Act, 15 U.S.C. §§ 1601 (2008), *et seq.* ("TILA"), and its Massachusetts counterpart, the Consumer Credit Cost Disclosure Act, MASS. GEN. LAWS ch. 140D (2004) (containing disclosure-based safe harbors); Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (2008) (statutory "safe harbor" from suit for forward-looking statements).

Although no other aid to interpreting the Legislature's intentions is necessary in light of the clear and unambiguous language of the Statute, such limited extrinsic aids that exist simply reinforce the conclusion that the Legislature intended to create a safe harbor and that ARAMARK has satisfied the requirements to invoke the protection of that safe harbor with respect to ARAMARK's administrative fees at issue in this case. There are no decisions from any of the Massachusetts courts interpreting the pertinent provisions Massachusetts Tips Statute as rewritten by the legislature in 2004.[5] There were two prior versions of the statute which took different and somewhat confusing positions as to an employer's obligations, which provoked a certain amount of litigation.[6] The Legislature obviously desired to clarify an employer's

---

[5] In a case pending in the U.S. District Court, *DiFiore v. American Airlines*, 561 F. Supp. 2d 131, 134 (D. Mass. 2008) Judge Young in a post-trial motion interpreted the definition of "service charge" contained in subsection (d) of the 2004 Statute to conclude that liability could extend to persons other than employers by operation of the statutory definition. However by order of October 1, 2008 Judge Young issued an order of certification to the Massachusetts Supreme Judicial Court as to the proper construction of the statutory definition of "service charge" in particular as to whether it applies to payments to non-employees.

[6] At issue in the litigation under the 1983 version of the Statute was principally the meaning of the terms "service charge" and "employee", and whether charges not designated as service charges were excluded from coverage under the Tips Statute. Thus the state court decisions interpreting the 1983 version of the Tips Statute are inapposite, as they were superseded by the safe harbor for administrative fees in 2004 statute, and by the addition of statutory definitions for the previously disputed terms. *See, e.g., Cooney v. Compass Group FoodService*, 870 NE 2d 668 (Mass. App. Ct. 2007) (interpreting and applying the Massachusetts Tips Statute as amended in 1983 and prior to its further amendment in 2004); *Benoit v. The Federalist, Inc.* No. 04-3516, slip op. at 10 (Mass. Super. Ct. June 30,

obligations in the 2004 amendment to the Statute, and did so by making an employer's obligations stringent for distributing services charges.   However, the legislature also simultaneously created a safe harbor exempting certain types of fees from coverage by statute where the employer meets specific disclosure requirements.

In sum, the plain language of the Massachusetts Tips Statute, and the Legislature's intent as gleaned from that plain language, reasonably demonstrates that a safe harbor was one of the purposes of the Statute and the requirements for that safe harbor have been satisfied by ARAMARK.[7]  Accordingly, the Court should dismiss Count I of the Complaint.

**B.      This Court should also dismiss Plaintiff's common law claims.**

In addition to Plaintiffs' claim under the Massachusetts Tips Statute, Plaintiffs assert claims for "Quantum Meruit/Unjust Enrichment" (Count II), breach of implied contract (Count III), and "Intentional Interference with Contractual and/or Advantageous Relations" (Count IV) based on the same alleged conduct asserted to support Plaintiffs' statutory claim under the Massachusetts Tips Statute.  Plaintiffs' claims are preempted by Plaintiffs' statutory claim under the Tips Statute, and Plaintiffs otherwise have failed to state a claim for relief as to any of these common law claims.  Accordingly, the Court should dismiss Plaintiffs' common law claims as well.

---

2006); *Michalak v. Boston Palm Corp.*, No. 031334F, 2004 WL 2915452, at *2-3 (Mass. Dist. Ct. Sept. 17, 2004).

[7] ARAMARK asserts that based upon the language and structure of the Statute the burden is on the Plaintiffs to plead and establish that ARAMARK's administrative fee is not covered by the safe harbor provision.  However, for purposes of this motion only, and expressly reserving and not waiving the issue of the allocation of the burden of proof as to the applicability of the safe harbor provision, ARAMARK contends that assuming, *arguendo*, that the burden instead is on ARAMARK, it has nonetheless met that burden. Therefore, the Court need not reach the issue of the burden of proof as to the applicability of the safe harbor provision in deciding this Motion.

> **(1)** **Plaintiffs' common law claims for undistributed administrative fees billed by ARAMARK are preempted by the Massachusetts Tips Statute.**

Plaintiffs' common law claims must be dismissed in their entirety, as they are preempted by Plaintiff's statutory claim under the Massachusetts Tips Statute. Statutory preemption of Plaintiffs' common law claims is consistent with Massachusetts substantive law as demonstrated by the decision of the Massachusetts Supreme Judicial Court in *Gasior v. Mass. Gen. Hosp.*, 846 N.E.2d 1133 (Mass. 2006). In that case, the Massachusetts Supreme Judicial Court held that Gasior could "not maintain a common-law breach of contract claim for [defendant's] allegedly discriminatory dismissal of him because any such claim would be preempted by G.L. c. 151B," the state's anti-discrimination statute applying to such claims. *Id.* at 1138 n.8. In support the court cited federal case authority, *Reidy v. Travelers Ins. Co.,* 928 F. Supp. 98, 106 (D. Mass. 1996), aff'd, 107 F.3d 1, 1997 WL 60801 (1st Cir. 1997), *cert. denied*, 522 U.S. 809 (1997).

Similarly, in *Melley v. Gillette Corp.,* the Massachusetts Supreme Judicial Court affirmed the intermediate court, which had concluded that where there is a comprehensive remedial statute, like the 2004 Tips Statute applicable here, the creation of a new common law action based on the public policy behind that statute interferes with that remedial scheme, and hence is preempted. *Melley v. Gillette Corp.,* 475 N.E.2d 1227 (Mass. App. Ct. 1985), aff'd, 491 N.E. 2d 252, 253 (Mass. 1986); *see also Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 45 (1st Cir. 1999) (affirming dismissal of Massachusetts common law cause of action where relevant public policy has already been vindicated by state or federal statute) (relying on decision of Massachusetts' Supreme Judicial Court in *Melley*), and *Andrews v. Arkwright Mut. Ins. Co.*, No. 923613, 1994 WL 879734, at *4 (Mass. Dist. Ct. Aug. 31, 1994) (refusing to recognize new common law action for pregnancy discrimination based on public policy expressed in comprehensive remedial statute, particularly where Andrews conceded that her common law claim for pregnancy

discrimination merged with her statutory claim).

Because the Massachusetts Tips Statute contains a legislative preference for an administrative solution and evinces a comprehensive remedial scheme, and because Plaintiffs have admitted in the Complaint that their asserted common law actions merge with their claims under the Tips Statute, the Court should find Plaintiffs' new common law claims preempted by the Massachusetts Tips Statute and dismiss those claims in their entirety.

If the Court should conclude that Plaintiffs' common law claims are not preempted by the Massachusetts Tips Statute, Plaintiffs nonetheless fail to state a claim for relief as to any of those common law claims. As a result, this Court should dismiss each of Plaintiffs' common law claims, as discussed below.

**(2)    Plaintiffs fail to state a claim for breach of implied contract.**

Plaintiffs allege in the Complaint that there exists an implied contractual relationship between ARAMARK's food service employees and ARAMARK's food service customers regarding gratuities or service charges paid by the customers, or charges that customers would reasonably believe would be paid to employees.  It is undisputed, however, that the fee at issue in this case is <u>not</u> designated a "service charge" but rather is designated an "administrative fee." *See* Exh. A.  Moreover, the administrative fee charged by ARAMARK is accompanied by a disclaimer advising that the fee is not for the benefit of service employees on the bill containing the administrative fee.  *Id.*  No contract may be implied in law regarding payment of that administrative fee to employees under such circumstances.  *See* Ex. A; *Zarum v. Brass Mill Materials Corp.*, 134 N.E.2d 141, 143 (Mass. 1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter.").  To the contrary, an implied contract regarding ARAMARK's administrative fees is specifically barred by the plain language of the Statute's safe harbor provision.

Nor may a contract be implied in fact, by virtue of custom in the industry or otherwise, regarding payment of administrative fees billed by ARAMARK directly to the customer on an order contracted for by the customer, as the event order addressing that administrative fee constitutes an express contract pertaining to that very subject. *Id.*

For all these reasons, this Court should dismiss Plaintiffs' common law claim for breach of implied contract.

> **(3)     Plaintiffs fail to state a claim for unjust enrichment/quantum meruit.**

As an alternative theory for relief, Plaintiffs assert that they are entitled to damages under the doctrine of quantum meruit, which allows recovery of damages when a contract is otherwise unenforceable. *See generally J.A. Sullivan Corp. v. Commonwealth*, 494 N.E.2d 374 (Mass. 1986); *see* also *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, No. CIV.A.02-11068-RGS, 2004 WL 344425, at *3 n.6 (D. Mass. Feb. 24, 2004) (emphasis added), aff'd, 400 F.3d 62 (1st Cir. 2005).   In this case, there is no contractual or other basis for Plaintiffs' claim for the proceeds of ARAMARK's administrative fees which quantum meruit might step in to supply. To the contrary, there is an explicit statutory bar to any liability under the Tips Statute for the distribution of administrative fees under that Statute.   Moreover, because the theory of unjust enrichment is equitable in nature, the Court must consider that the Tips Statute bars the relief sought here, and thus there can be no equitable relief.   For these reasons, the Court should also dismiss Plaintiffs' unjust enrichment/quantum meruit claim.

> **(4)     Plaintiffs fail to state a claim for intentional interference with contractual or advantageous relations.**

According to Count IV of the Complaint, ARAMARK, by "not remitting to plaintiffs the total proceeds of gratuities or service charges (or charges that customers would reasonably believe would be paid to the employees)", allegedly "unlawful[ly] interfere[d] with the implied

contractual and/or advantageous relationship that exists between the food service employees and the defendants' customers under state common law."  *See* Comp. Count IV. Yet Plaintiffs' argument begs the question that must be answered in the negative, regarding whether any contractual or advantageous business relationship exists.  *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006) (in action for intentional interference with contractual relations, plaintiff must prove, *inter alia*, he had contract with third party); *Gouin v. Gouin*, 249 F. Supp. 2d 62, 75 (D. Mass. 2003) (no claim for intentional interference with advantageous business relationship in absence of qualifying business relationship).  No implied contract exists between ARAMARK's employees and its customers covering the administrative fees at issue for the reasons explained above.  As to Plaintiffs' claim of a purported advantageous business relationship, the safe harbor of the Tips Statute deprives Plaintiffs of any right to ARAMARK's administrative fee and therefore Plaintiffs can have no advantageous relationship under the common law covering that administrative fee.  Because the requirements of the statutory safe harbor in the Tips Statute are satisfied, there can be no claim that any contractual or advantageous business relationship exists to support Plaintiffs' claim.  Accordingly, the Court should dismiss Plaintiffs' claim for intentional interference with contractual or advantageous relations.

## V.    Conclusion

WHEREFORE, ARAMARK Sports, LLC respectfully requests that the Court grant its Motion to Dismiss in its entirety, and any other relief the Court deems just and proper.

Respectfully submitted,

ARAMARK Sports, LLC
By Its Attorneys,


/s/ Anne Marie Estevez

| | |
|---|---|
| Charles Fried, BBO# 179620 | Anne Marie Estevez (admitted *pro hac vice*) |
| 1545 Massachusetts Avenue | E-mail:  aestevez@morganlewis.com |
| Cambridge, Massachusetts  02138 | Joan M. Canny (admitted *pro hac vice*) |
| Tel:    617.495.4636 | E-mail:  jcanny@morganlewis.com |
| E-mail:  Fried@law.harvard.edu | Morgan, Lewis & Bockius LLP |
| *Application for district court* | 5300 Wachovia Financial Center |
| *admission pending* | 200 South Biscayne Boulevard |

Miami, Florida  33131-2339
Tel:    305.415.3330

Steven R. Wall (admitted *pro hac vice*)
E-mail:  swall@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
Tel:    215.963.4928

Jeffrey W. Moss, BBO# 552421
Morgan, Lewis & Bockius LLP
125 High Street - 14th Floor
Boston, Massachusetts  02110-2704
Tel:    617.341.7860
Email:  jmoss@morganlewis.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on this 2nd day of

December, 2008.


/s/ Anne Marie Estevez
Anne Marie Estevez