**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MAUREEN ENNIS, PATRICIA DEVIN, PATRICIA SCHULZE, LUIS LEON, and all others similarly situated,

Plaintiffs,

v.

ARAMARK SPORTS, LLC and THE MASSACHUSETTS CONVENTION CENTER AUTHORITY,

Defendants.

Civil Action No. 08-11799-PBS

# PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On June 22, 2009, the Court granted preliminary approval of the proposed class action settlement in this case, which was brought on behalf of food service employees who have worked for Aramark Sports LLC ("Aramark") at the Boston Convention Center or Hynes Convention Center. In this case, the plaintiffs alleged that food service employees were entitled, under the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A (and related common law claims), to receive the total proceeds of charges that have been added to food and beverage bills. Plaintiffs contended that these charges qualified as "service charges" under § 152A and therefore should not have been retained by Aramark but instead should have been remitted to food service employees.[1] Aramark contended primarily that these charges did not qualify as "service charges" under § 152A, and thus did not need to be remitted to employees, because the charges

[1] The case was brought against Aramark and the Massachusetts Convention Center Authority (MCCA). The parties' informal discovery revealed that the vast majority of the disputed charges were imposed by Aramark; the MCCA had imposed the charge in only a handful of instances.

were labeled as "administrative fees" on customer documents and because customer documents also contained written disclaimers that expressly notified customers that these fees were not tips, gratuities, or service charges to be paid to employees.

After surviving a motion to dismiss, and then obtaining and reviewing thousands of pages of representative documents distributed to customers, the plaintiffs reached an agreement with Aramark to settle this case for a sum of $1.75 million.[2] As described further below, Plaintiffs' counsel, who has pioneered Massachusetts Tips Law litigation and has litigated and settled dozens of Tips Law cases over the past eight years, believes this settlement to be quite favorable to the plaintiff class. In no other case that Plaintiffs' counsel has litigated have the disputed charges been so clearly disclosed not to be tips, gratuities, or service charges – through express written disclaimers on the actual bills and contracts, as well as on other documents provided to customers.[3] Indeed, a heated current topic of litigation surrounding the Tips Law is whether charges that are expressly called "administrative fees" can even be covered by the Tips Law at all, given that the statute contains an explicit exception for "administrative fees." §152A(d). Although this Court denied Aramark's motion to dismiss in order to allow

---

[2] The proposed estimated distribution of the settlement is attached here as Exhibit 1.

[3] In opposing Aramark's motion to dismiss, Plaintiffs' counsel cited to a handful of documents she had obtained in support of the argument that these charges had been portrayed as "service charges." These documents included internal billing documents, which were not disclosed to customers. The documents that were disclosed to customers included menus and customer contracts. The parties' informal discovery revealed that the menus Plaintiffs' counsel had obtained in order to oppose the motion to dismiss were outdated menus that referred to "service fees" – menus within the statutory period had been changed to "administrative fees". Plaintiffs' counsel was also able to include in opposition to the motion to dismiss several customer contracts that listed the charges as "administrative fees" but without an additional express disclaimer that the fees were not tips, gratuities, or service charges. Aramark had objected to Plaintiffs' use of these documents on the ground that the complete documents included such a disclaimer, although for some contracts the disclaimer carried over to the next page. The parties' informal discovery revealed that most contracts did contain the disclaimer on the same page, but that in relatively rare instances, the disclaimer was on the next page.

Plaintiffs to conduct discovery, another court has recently granted summary judgment for a defendant employer in a very similar case in which food service employees contended that charges labeled "administrative fees" could be misconstrued by customers to be service charges. That case, *Bednark et al. v. Catania Hospitality Group, Inc. et al.,* Barnstable County Sup. Ct. Civil Action No. BACV2008-00301, (attached here as Exhibit 2) is now going to the Appeals Court.[4]

Given the great uncertainty surrounding this legal issue, as well as the very difficult facts faced by the plaintiffs in this case, Plaintiffs' counsel concluded that settlement of this case in an early stage was in the best interest of the class. As noted briefly above and in the preliminary approval motion, Plaintiffs' counsel is personally responsible for developing the law in this area. She has had no hesitation taking Tips Law cases to trial and litigating these cases for years when necessary. She has so far taken three Tips Law cases to trial (all successful), handled two Tips Law cases on appeal (also both successful), and obtained summary judgment in favor of plaintiffs and defeated defendants' motions for summary judgment in a number of Tips Law cases as well. She is thoroughly versed in the legal issues and arguments surrounding this law. Given the real uncertainty Plaintiffs faced in this case going forward, and given that Aramark was willing to settle this case for a substantial sum at this early stage, Plaintiffs' counsel determined that this settlement was an excellent result for the class and agreed to it.

[4] In *Bednark*, the court dismissed the case on summary judgment on the ground that the disputed charges were called "administrative fees", even without the express disclaimer that Aramark included on its documents that the administrative fee is not a tip, gratuity, or service charge for the service employees.

Following the Court's preliminary approval of the settlement, notices were sent to the class, and hundreds of class members submitted claim forms to receive their share of the settlement.[5] No class members have objected to the settlement. Moreover, the amounts to be distributed to class members in this case are substantial. *See* Exhibit 1. Indeed, the distribution of the settlement to class members (even after deduction of attorneys' fees) will result in a distribution per class member that is in line with, or higher than, the distribution per class member in most of the other settlements that Plaintiffs' counsel has achieved in a Tips Law class action. For all these reasons, discussed further below, the Court should grant final approval of the settlement.

## I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well-established that courts favor settlements of lawsuits over continued litigation. *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp.*, 614 F.2d 11, 15 (1st Cir. 1980). Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *Sniffin v. Prudential Ins. Comp*., 395 Mass. 415 (1985).

A presumption of fairness of a settlement is established where the parties can show that: (1) the settlement was the product of arms-length bargaining; (2) sufficient investigation has been taken to enable counsel and the court to act intelligently; (3) the proponents of the settlement are counsel experienced in similar litigation; and (4) the

5 Approximately half of the class of 1,400 people submitted claim forms in response to the notice.

number of objectors or interests they represent is not large when compared to the class as a whole. 4 Herbert B. Newburg and Alba Conte, *Newburg on Class Actions* § 11:41 (3rd ed. 1992-2002). In addition, courts consider the amount of the settlement compared to the amount at issue in the case and the plaintiffs' likelihood of succeeding on the merits and recovering damages on their claims. *See, e.g., M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass. 1987). However, in considering these factors and determining whether to approve a settlement, the Court "does not resolve the legal and factual issues that are the basis of the underlying lawsuit." *Bronson v. Board of Educ. of City School Dist.,* 604 F. Supp. 68, 74 (S.D. Oh. 1984); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("[W]hile it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes."). A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir. 1983). It its well settled that "[c]lass counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*

In the case at bar, an examination of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate to the members of the class, and should receive final approval from the Court.

Notably, settlements in similar cases brought by Plaintiffs' counsel under the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A, have been approved in more than twenty cases; these settlements contained nearly identical terms to the proposed

settlement in this case, including a similar method for notifying putative class members and distributing the settlement proceeds and the same provision for attorneys' fees.[6]

In this case, Aramark agreed to a settlement relatively early in the litigation process for what Plaintiffs believe is approximately 30% of the potential statutory damages at issue in the case.[7] Plaintiffs' counsel was provided with voluminous sample documents for various time periods and data that was used to compute a reasonable estimation of potential damages. The documents and information provided to Plaintiffs' counsel also demonstrated the risks they would face in proceeding with this litigation.[8]

---

[6] These cases include: *Scatto v. Fine Hotels Corp.*, C.A. No. 07-1823 (Bristol Superior Ct. 2009); *Karag v. State Room, Inc.*, C.A. No. 07-4190 (Suffolk Superior Ct. 2009); *Mouiny v. Commonwealth Flats Dev. Corp. d/b/a Seaport Hotel and World Trade Center*, C.A. No. 06-1115 (Suffolk Superior Ct. 2009); *Shea et al. v. Weston Golf Club*, C.A. No. 02-1826 (Middlesex Superior Ct. 2009); *Rose et al. v. Ruth's Chris Steak House Boston*, C.A. No. 07-5081 (Suffolk Superior Ct. 2008); *Verrecchia et al. v. DT Management, Inc. d/b/a Hotel @ MIT*, C.A. No. 08-0127 (Middlesex Superior Ct. 2008); *Perry et al. v. Woodman's, Inc.*, C.A. No. 08-1218 (Essex Superior Ct. 2008); *Roth v. Vesper Country Club*, C.A. No. 07-1231 (Middlesex Sup. Ct. 2008); *Cooney et al. v. Compass Group Foodservice and Northeastern University*, C.A. No. 02-3159 (Middlesex Superior Ct. 2008); *Paratore et al. v. F-1 Boston Café, LLC*, C.A. No. 02-2162 (Norfolk Superior Ct. 2008); *Byrne et al. v. Elephant and Castle Group, LLC*, C.A. No. 06-4732 (Suffolk Superior Ct. 2008); *Tucker et al. v. Halifax Investments, Inc.*, C.A. No. 07-154 (Plymouth Superior Ct. 2008); *Ng et al. v. Jin Restaurant Group LLC*, C.A. No. 07-333 (Essex Superior Ct. 2008); *Fernandez et al. v. Four Seasons Hotel*, C.A. No. 02-4689 (Suffolk Superior Ct. 2008) (banquets) (Muse, J.); *Banks et al. v. SBH Corp. (Grill 23)*, C.A. No. 04-3515 (Suffolk Superior Ct. 2007) (Connolly, J.); *Frye et al. v. Columbia Sussex Corp.*, C.A. No. 06-4622 (Middlesex Superior Ct. 2007) (Billings, J.); *Calcagno et al. v. High Country Investor, Inc. (Hilltop)*, C.A. No. 03-0707 (Essex Superior Ct. 2006) (Murtagh, J.); *Ellison, et al. v. NPS, LLC*, C.A. No. 05-01105 (Middlesex Sup. Ct. 2006) (Hamlin, J.); *Meimaridis, et al. v. Brae Burn Country Club*, C.A. No. 04-3769 (Middlesex Superior Ct. 2006) (Fremont-Smith, J.); *Hough et al. v. Select Restaurants, Inc. d/b/a Top of the Hub*, C.A. No. 05-1258 (Suffolk Sup. Ct. 2006) (Brassard, J.); *Bullock et al. v. Ritz-Carlton Hotel Co.*, C.A. No. 04-04379 (Suffolk Sup. Ct. 2005); *Michalak et al. v. Boston Palm Corporation*, C.A. No. 03-1334 (Suffolk Sup. Ct. 2004) (White, J.); *Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc.*, C.A. No. 02-01827 (Middlesex Sup. Ct. 2004) (Neel, J.); *Fernandez et al. v. Four Seasons Hotel, LTD*, C.A. No. 02-4689 (Suffolk Sup. Ct. 2004) (Walker, J.); *Keyo et al. v. Seaport Hotel and World Trade Center Boston, et al.*, C.A. No. 02-3339 (Suffolk Sup. Ct. 2004) (Murphy, J.); *Licari et al. v. Meridien Hotels, Inc.*, C.A. No. 02-3340 (Suffolk Sup. Ct. 2003) (McEvoy, J.); and *Latta et al. v. The Nashawtuc Country Club, Inc.*, C.A. No. 01-4185 (Middlesex Sup. Ct. 2003) (Giles, J.).

[7] More specifically, the total settlement is for an amount roughly equal to 30% of the total estimated statutory damages in this case if every single class member submitted a claim form. In fact, only about half of the class members responded to the notice, and so (because there is no reverter of unclaimed funds to Aramark) each participating class member's recovery will actually be significantly higher than 30% of their total potential statutory recovery.

After a 17-hour mediation session with a respected JAMS mediator who is well versed in wage and hour class actions (Michael Loeb, from San Francisco), this settlement was clearly reached as a result of arm's-length negotiations.

When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement. *See City Partnership Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996); *United States v. Cannons Engineering Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989); *Berenson*, 671 F. Supp. at 822 (where a proposed class settlement has been reached after meaningful investigation into the facts, after arm's length negotiation, conducted by capable counsel, it is presumptively fair).

Not only is Plaintiffs' counsel highly experienced in similar litigation, but this precise type of case has been her specialty for much of the past decade. Over the last eight years, Plaintiffs' lead counsel, Attorney Shannon Liss-Riordan, has represented food service employees in more than fifty cases brought under state and federal tips laws very similar to this one, in which the employees claim they have not been permitted to retain the total proceeds of charges added to food and beverage bills or tips given to them by patrons. Many of these cases have settled, and others remain in various stages of litigation. Along with her co-counsel Attorney Hillary Schwab, she has taken three tips cases to trial and has won all three before juries: *Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House*, C.A. No. 03-0707, Mass. Sup.

[8] As described above, the voluminous documents produced by Aramark revealed that the vast majority of documents provided to customers contained an express disclaimer that the administrative fees were not tips, gratuities, or service charges to be distributed to service employees, and the documents Plaintiffs' counsel had obtained earlier that referred to the charges as "service fees" were primarily internal documents not shown to customers, as well as outdated menus that had not been used within the statutory period.

Ct. (Essex 2006) (banquet coordinators not entitled to share in gratuities); *Benoit et al. v. The Federalist, Inc.*, C.A. No. 04-3516, Mass. Sup. Ct. (Suffolk 2007) (coordinators not entitled to portion of banquet service charges); and *DiFiore et al. v. American Airlines, Inc.*, C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008) (airline's policy of collecting $2 per bag charge for curbside check-in that was not distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious interference with advantageous relations). She and Attorney Schwab have also handled two tips cases on appeal, both of which they also won: *DiFiore et al. v. American Airlines, Inc.*, 454 Mass. 486 (2009) (Massachusetts Supreme Judicial Court decided on certified question that non-employers are covered by Mass. Tips Law, affirming jury verdict for plaintiff skycaps); *Cooney et al. v. Compass Group Foodservice,* 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary judgment for plaintiff servers, holding that Massachusetts Tips Law should be strictly construed against establishment that did not distribute proceeds of charges labeled "service charges" to waitstaff employees). Attorney Liss-Riordan, with her co-counsel, has prevailed on summary judgment on behalf of plaintiff waitstaff in at least seven tips cases. She has been appointed class counsel for a national class of waitstaff employees in a case against a national steakhouse chain, *Johnson et al., and Morton's Restaurant Group, Inc.,* AAA Case No. 11 160 01513 05 (confirmed by the federal district court, Judge Mark Wolf, C. A. No. 07-11808 (D. Mass. 2008)). Along with her New York co-counsel, Attorney Liss-Riordan has been appointed lead interim class counsel on behalf of Starbucks baristas across New York State by the federal district court (Judge Laura Swain) in the case of *In re Starbucks Employee Gratuities Litigation*, C.A. No. 08-3318-LTS (S.D.N.Y. 2008).

For profiles of Attorney Liss-Riordan's work on behalf of tipped employees, *see* Exhibit 3 (*Boston Globe*, front page, Apr. 29, 2008, "Skycaps and waiters find a legal champion"), and Exhibit 4 (*Lawyers and Settlements*, Apr. 9, 2008, "Attorney Shannon Liss-Riordan: Challenging Corporate Power and Tips Abuse").

Plaintiffs' counsel is thus well aware of the law in this area. Her experience in this area provided the class with a high degree of expertise, which clearly contributed to such a prompt and favorable resolution of this case. Plaintiffs' counsel used the knowledge derived from these other cases in determining what would be a fair settlement for Plaintiffs in this case.

In the more than twenty other cases that Plaintiffs' counsel has settled as class actions brought under the Massachusetts Tips Law, which have included thousands of class members overall, Plaintiffs' counsel has been, and continues to be, actively involved in the administration of numerous settlements. These tasks have required Plaintiffs' counsel and assistants to speak with and correspond with many class members from all of these cases. Nearly universally, class members with whom Plaintiffs' counsel has been in contact from these cases have been supportive of, and indeed quite excited about, these settlements. For them, these settlements have brought them additional income, which most of them were not expecting.

While class members often have little basis from which to judge independently the fairness of a proposed settlement, Plaintiffs' counsel take very seriously their obligation and duty to these unnamed class members and will agree to a settlement only when they are convinced that it is in the best interest of the class.

In this case, given Plaintiffs' counsel's review of the evidence, as well as her

extensive background in this area of law, counsel recognized the very difficult challenges the plaintiffs would have faced in attempting to prove that the "administrative fees" added to Aramark's food and beverage bills were service charges under the Tips Law, given that they have been called "administrative fees" within the statutory period and given the express disclaimers included on bills and other customer documents. Moreover, the Massachusetts Appeals Court is poised to rule on the question of whether charges that are called "administrative fees" can *ever* qualify as service charges under the Tips Law (even without the disclaimers that were present on Aramark's bills). *See* Exhibit 2 (*Bednark* summary judgment decision). In light of the fact that Aramark offered a substantial settlement of this case without the plaintiffs having to take these risks, Plaintiffs' counsel determined that it was in the best interests of the class to accept it.

## II. <u>THE PROPOSED PLAN OF DISTRIBUTION OF THE SETTLEMENT FUNDS</u>

As described in the preliminary approval motion, notice of the settlement and claim form were sent to the last known addresses of all non-supervisory employees who worked in positions related to food and beverage service (e.g., catering, concessions, and others who have performed food and beverage service functions) for Aramark Sports, LLC or another Aramark-related entity at the Boston Convention Center or Hynes Convention Center at any time between October 1, 2002 and June 22, 2009.[9] Aramark provided records to Plaintiffs' counsel showing the positions held by class

[9] This settlement class period negotiated by the parties covers the period six years prior to the filing of this case, pursuant to the six-year statute of limitations for the contract-based common law claims included in the Complaint. Defendants dispute that Plaintiffs appropriately could have pursued these common law claims but agreed to include the associated six-year limitation period in this settlement in the interest of achieving finality and avoiding the risks, costs, and delays associated with continued litigation.

members, as well as the number of hours worked by each of these employees during the two relevant time periods (three years prior to the filing of the lawsuit to the date of preliminary approval, and six years to three years prior to the filing of the lawsuit). The distribution of the fund is in proportion to the number of hours worked by each participating class member during the class period, with hours worked within the three year period prior to the filing of the lawsuit (October 1, 2005, to June 22, 2009) receiving three times greater weight than hours worked during the preceding three year period (October 1, 2002, to October 1, 2005).[10] In addition, hours worked by waitstaff have been given three times as much credit as hours worked by other food service employees.[11] This general method of distribution, a version of which has been approved and used in more than two dozen tips law class action settlements reached by Plaintiffs' counsel, will provide each participating class member with a share of the settlement in proportion to Plaintiffs' counsel's best estimate of the amount of damages to which he or she had a claim if Plaintiffs had prevailed in this case on a class-wide basis.[12] The estimated distribution of the settlement is attached as Exhibit 1.[13]

[10] The hours worked within the three-year period prior to the filing of the complaint are receiving greater weight because of the possibility of treble damages for the statutory Tips Law claim that does not exist for the common law claims.

[11] This weighting is also consistent with the distribution formula Plaintiffs' counsel has used in the majority of other settlements she has reached in Tips Law class actions, where non-waitstaff service employees such as bussers and bartenders have received settlement shares weighted one-third the amount of waitstaff's shares.

[12] For employees who had disputes about the number of hours with which they were credited from Aramark's time records, counsel have worked amicably to resolve these disputes. If any further disputes arise or other adjustments are required to the settlement shares for individual class members, counsel will continue to cooperate and will bring them to the Court's attention if they are not able to resolve them amicably. The parties have agreed to set aside a portion of the settlement fund (which Plaintiffs propose to be $75,000) to pay late-filed claimants and resolve any disputes that may arise regarding the distribution. After twelve months, any remaining funds (as well as the proceeds of uncashed checks) will be donated as *cy pres* to Greater Boston Legal Services.

Further, as described in the preliminary approval motion, the agreement allows for enhancement payments for the named Plaintiffs. At the approval hearing, the Court stated concerns about enhancement payments for lead plaintiffs in class actions. Plaintiffs understand that approval of these payments are in the Court's discretion and note only, as they did in the preliminary approval motion, that incentive payments are a routine part of class action litigation and serve to compensate class representatives who have initiated claims (and lent their names and risked the repercussions of litigation) for the benefit of others.[14]

## III. THE REQUESTED ATTORNEYS' FEE IS FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

Finally, the settlement agreement provides for a one-third share for attorneys' fees and expenses. The named plaintiffs signed retainer agreements providing for a one-third contingency arrangement, and the notice of settlement (including the cover

---

13 In order to maintain the employees' confidentiality, names are not included on this spreadsheet, except for the named plaintiffs. This proposed distribution is an estimate and may still require some adjustments before disbursements are made to the class. The claims administrator is still receiving claims that were postmarked by the response deadline, and the parties are still working to resolve several issues regarding the amounts of hours that some class members should be credited with for calculating their settlement shares.

14 As noted in the preliminary approval motion, courts have recognized that such payments can also serve an important function in promoting class action settlements. These payments are generally approved so long as they are not "greatly disproportionate to the recovery set aside for absent class members" in order to ensure "that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members." *Sheppard v. Consolidated Edison Company of New York, Inc.*, 2002 WL 2003206, *5-6 (E.D.N.Y. 2002) (collecting cases approving enhancement payments). *See also Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of enhancement payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); *Yap v. Sumintomo Corp. of Am*., 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs). If the Court were to approve modest incentive payments (such as $5,000 each) for the lead plaintiffs who initiated this case and thus made it possible for others to reap the benefit of the case, these payments could be taken from the fund set aside for late claimants and disputes, without affecting the proposed distribution contained in Exhibit 1.

letter) explicitly informed class members that one-third of the total settlement proceeds would be used to pay for attorneys' fees. Significantly, no plaintiff or class member has raised any objection to this payment. Briefly put, had it not been for Plaintiffs' counsel's agreement to take on this case, and indeed her work taking on this area of the law over the last eight years, there would be no payments being made now to any of the class members.[15] This case really was her creation.

As noted earlier, Attorney Liss-Riordan has been a pioneer in the development of the law protecting tipped employees and is widely recognized as having developed the law surrounding this statute in Massachusetts. Since 2001, she has been pursuing Tips Law claims against restaurants, hotels, and other food and beverage establishments, and it is because of her work that this law is now so well known (and likely due to her work that this area of litigation has spread in recent years around the country). She has handled more than fifty Tips Law cases, including three that resulted in successful jury verdicts, two that resulted in favorable appellate rulings, more than a dozen that have been heard on summary judgment, and more than two dozen that have settled. It appears clear that Aramark agreed to a substantial early settlement of this case because of Plaintiffs' counsel's singular success with these cases.[16]

The proposed attorneys' fee is the same standard one-third share that has been approved routinely by judges presiding over class action settlements (*see* cases cited *infra* at 18-19), including all the judges who have ruled on the fairness of the other

[15] The plaintiffs contacted other attorneys before Attorney Liss-Riordan, who declined to take the case, given that the charges at issue here are called "administrative fees."

[16] Notably, Aramark hired a former justice of the Massachusetts Supreme Judicial Court, Charles Fried, to oppose Attorney Liss-Riordan in arguing its motion to dismiss before this Court.

settlements achieved by Plaintiffs' counsel in Tips Law cases, listed above in note 6. As this case is one brought under Massachusetts law, which is in federal court only because of diversity, the fact that Massachusetts courts considering class action settlements for similar claims under the same state law have consistently awarded a one-third share for attorneys' fees should be persuasive.

In considering the fee request, the Court should consider that Plaintiffs' counsel who take cases on contingency, including the undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work. The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive earlier larger payments. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"). Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

Indeed, Attorney Liss-Riordan is still litigating cases that were filed years ago, and her firm has advanced great sums in out-of-pocket expenses to pursue litigation on behalf of low-paid workers in various types of employment cases, including wage and hour and discrimination cases. To name a few examples, she and her partner Hillary Schwab have tried and won tips cases against the Federalist restaurant (on behalf of waitstaff, in 2007) and American Airlines (on behalf of skycaps, in 2008), but the firm

has received no payment for either of these victories while the cases (filed in 2004 and 2006, respectively) proceed on post-trial motions and likely appeals. She and her partner Harold Lichten tried and won the *Bradley v. City of Lynn* case before this Court, 443 F. Supp.2d 145 (D. Mass. 2006), on behalf of Black and Hispanic firefighter applicants and received no payment for their work for years (despite advancing hundreds of thousands of dollars in expert fees). They are now continuing to litigate a follow-up case on behalf of minority police officers challenging promotional exams for having unlawful disparate impact, *Lopez v. Commonwealth*, C.A. No. 07-11693-JLT, which likewise has required significant outlay of costs.

In order to conduct a litigation practice that takes risks such as these on behalf of parties that could not afford representation on a basis other than contingency, firms need to be permitted to collect contingency fees on the cases that do settle early. Moreover, courts have recognized the benefits of contingency fee arrangements, in that they deter over-litigation, reward efficiency, and compensate counsel based on the actual market benefits of their services. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit.*, 56 F.3d 295, 307 (1st Cir. 1995) (noting the benefit of awarding attorneys' fees based on a percentage of fund approach, as such an approach is "results-oriented rather than process-oriented").[17]

[17] In a case such as this one, Plaintiffs' counsel could have chosen not to agree to a proposed settlement and instead continued the litigation in order to increase a justification for the fee, but such a course would not have been in the best interests of the class. With her experience in wage and hour class action cases, and Tips Law class actions in particular, Plaintiffs' counsel did not believe that the risk the plaintiffs faced in this case on summary judgment (or the delay that would have resulted had there been no settlement) was in the best interests of the class, given that a reasonable, indeed substantial, settlement was available much sooner. Even for a successful case, earlier settlement may often be in the best interests of the class because of the lengthy delays that may result when a case is particularly hard fought. By way of example, Plaintiffs' counsel filed the *Benoit v. Federalist* Tips Law case in 2004, tried it to a jury in 2007, and obtained final judgment and an entry of treble damages in 2009. Despite the

To the extent that there are risks associated with allowing recovery of fees as a percentage of the common fund, those risks are not present here. In *Thirteen Appeals*, the First Circuit noted the concern that this approach "may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources." 56 F.3d at 307. Similarly, courts have expressed concern over attorneys' fee awards based on a percentage of a common fund where the attorney involved has essentially "piggybacked" the case on the success of other attorneys in other similar cases. *See, e.g., Mazola v. The May Department Stores Co.*, 1999 WL 1261312, at *2 (D. Mass. 1999) (Gertner, J.) (noting that the "percentage of the common fund" approach "may be appropriate for the counsel that innovated the cause of action, and took all the risks," but "it is not entirely appropriate for counsel that takes advantage of the efforts of others who have . . . done the 'spadework'") (citing *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 188 (D. Mass. 1998) (Saris, J.)). Here, as set forth above, though this case resolved at a relatively early stage, Plaintiffs' counsel "has invested significant time or resources," 56 F.3d at 307, in litigation under the Massachusetts Tips Law, and it was Plaintiffs' counsel's years of litigation in this area that made the settlement of this case possible. This was not a case where Plaintiffs' counsel swooped in at the eleventh hour to take advantage of years of groundwork laid by another attorney (or by state attorneys general); instead,

---

plaintiffs' success in court, the class has yet to receive any compensation from the case as the defendant in that case continues to litigate. Here, in contrast, the defendant agreed to a settlement that would provide substantial relief to the class in a much shorter period of time.

the groundwork was entirely Attorney Liss-Riordan's own work in previous Tips Law cases.[18]

The requested fee in this case should also be viewed in the context of the amount of the class settlement. The total proposed settlement in this matter is for $1.75 million, which is not a "mega-fund" recovery for which courts have deemed lower percentage attorney fee recoveries appropriate. Courts have awarded fees of one-third or thereabouts in cases with much higher recoveries. The class settlement at issue in *Thirteen Appeals*, for example, was for $220 million, more than one hundred times the amount of the settlement here, and the court approved a fee amounting to 31% of the common fund ($68 million). 56 F.3d at 307.

Moreover, in this case, the amount of this settlement is a real settlement for class members – there is no reverter of unclaimed funds to Aramark. Also, the individual amounts that class members will be receiving are significant. This is not a case where class members receive pennies; hundreds of class members here will receive hundreds or thousands of dollars in income they were not expecting.

Courts generally favor awarding fees from a common fund based upon the percentage of the fund method. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than

[18] For this reason, application of the lodestar method is inappropriate in this case as that method would not be an accurate measure of the value added by Plaintiffs' counsel in this case. Notably, though the First Circuit permits use of either the "percentage of common fund" or the lodestar approach to calculate fees in a class action settlement, *see Thirteen Appeals*, 56 F.3d at 307, some federal appellate courts have explicitly stated that the former approach is preferred. *See, e.g., Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993) ("a percentage of the fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condominium Association v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

> himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted.) *See also Blum v. Stenson*, 465 U.S 886, 900 n.16 (1984); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit.*, 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund).[19]

A one-third attorneys' fee in a common fund case has been consistently approved as reasonable. Examples of cases in which a one-third fee was approved include: *In Re: Lithotripsy Antitrust Litigation,* No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); *In re: Medical X-Ray Film Antitrust Litigation*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *City National Bank v. American Com. Financial Corp.*, 657 F. Supp. 817 (W.D.N.C. 1987); *In re Franklin Nat'l Bank*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y.

---

19 Among the advantages recognized by the First Circuit in *Thirteen Appeals*, was the fact that the percentage method is less burdensome to administer than the lodestar method. *See id.* at 307. The court also endorsed the percentage of recovery approach because it is result-oriented, and hence it promotes the more efficient use of attorney time, and because the percentage method also better reflects the market value of counsel's services. In *Thirteen Appeals*, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases. *See, e.g., Camden Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993). *See also* Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) and Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994).

1980) (34% of settlement fund); *Hwang v. Smith Corona Corp.*, B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); *In re: Peritus Software Services, Inc. Sec. Litig.*, C.A. No. 98-10578-WGY (February 28, 2000); *In re: Copley Pharmaceutical, Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A. No. 10829-REK (D. Mass. Feb. 4, 1998); *In re Gillette Securities Litigation*, C. A. No. 88-1858-REK (D. Mass. Mar. 30, 1994); *Wilensky v. Digital Equipment Corporation*, C.A. No. 94-10752-JLT (D. Mass. July 11, 2001); *In re Picturetel Corporation Sec. Litig.*, C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); *Zeid v. Open Environment Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement). Given this precedent approving one-third recovery for attorneys' fees in class action cases, the Court should recognize that a one-third recovery in this case is reasonable.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the class action settlement in this case is fair and reasonable. Plaintiffs therefore respectfully request that this Court grant final approval to the settlement (which was attached as Exhibit 1 to Plaintiffs' preliminary approval motion).

Respectfully submitted,

MAUREEN ENNIS, PATRICIA DEVIN,
PATRICIA SCHULZE, LUIS LEON,
and all others similarly situated,
By their attorneys,

_/s/ Shannon Liss-Riordan_______________
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated: September 16, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served on all counsel of record by electronic filing on September 16, 2009.

__/s/ Shannon Liss-Riordan__________
Shannon Liss-Riordan, Esq.