*LawyersandSettlements.com*

**Legal News. True Stories.**

## Attorney Shannon Liss-Riordan: Challenging Corporate Power and Tips Abuse

*April 9, 2008. By Paul Halpern*



*Boston, Massachusetts:* LawyersandSettlements' interview with Shannon Liss-Riordan, a partner in the labor, employment, and class action law firm of <u>Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.</u> was delayed a day. That's because Liss-Riordan had to be in court for the verdict in a Massachusetts tips case taken against American Airlines. It was the first thing she mentioned when we reached her the next morning, so we took it from there.

*LawyersandSettlements (LAS): What was your latest verdict about?*

Shannon Liss-Riordan (SLR): We just got a verdict yesterday. We won restitution of $325,000 on behalf of nine Skycaps at Logan International Airport who sued American Airlines, who like some other airlines have recently been charging passengers $2 per bag for curbside checkin. We charged that this practice violated the Massachusetts tip law, and we won. The jury also found tortious interference and violation by American Airlines with the Skycaps' relationship with passengers.

*LAS: What did the tortious interference finding determine?*

It involved the same cash that passengers have always been willing to pay Skycaps as tips for the convenience of curbside checkin—avoiding hauling their bags inside and standing in line in the terminal to check in for a flight. We argued that the checkin fee essentially redirected the Skycaps' tips to American Airlines.

Many passengers thought this fee was a mandatory tip for the Skycaps; we argued that people didn't realize that the money wasn't going to the Skycaps; it was going directly into the coffers of American Airlines. The jury found that this constituted tortious interference under the Massachusetts tip law, but it did not for the one Skycap we represented from Lambert/St. Louis Airport in Missouri, since Missouri doesn't have a tip law.

Originally we asked that the case be certified as a national class action. The judge denied that, but since we've now won at the state level, we may be seeking again to have it certified, and because jury found tortious interference under Massachusetts law, we believe that if we can get certified as a national class action, we can persuade a jury that we have tortious interference elsewhere as well. Now that we've won in Massachusetts, we believe this shows we've got a serious case and we can go forward.

*LAS: You've also recently filed a class action for baristas against Starbucks for tip pooling violations similar to the recent successful action in California. Does the Massachusetts state labor code have a tips clause like the one in California?*

SLR: The Massachusetts tips law is even more favorable to baristas than California; it's actually the most protective in the nation. The tips law refers to "an employer or its agent" in New York, where we've also filed, and in California. In California they found that the shift supervisors were "employer's agents". In Massachusetts, you don't even have to do the "agency" analysis; the law simply states that no employees with any managerial authority may receive any share of pooled tips. The Massachusetts state attorney general has issued an advisory to this effect, so we think the Massachusetts case is even easier than the California case.

*LAS: Given that, do you think that Starbucks may decide to settle in Massachusetts rather than go to trial?*

SLR: Well, that would be a welcome change! I've found, though, that in most of these cases, they'll fight it all the way through trial. Starbucks has vowed to fight this case, they've vowed to appeal the California decision, and they're trying to make themselves look like a benevolent employer. Why can't they just admit they made a mistake and correct their workplace practices?

I find this a lot with tips and wage and hour cases. The employers will fight it and fight it, and then years down the road, when they lose, they wind up paying much more. I'll be glad to take on that fight. I've filed at least 40 tips class actions over the years; I've settled about 20, and the rest are pending. Some of the cases I'm settling now I filed in 2002, and the settlements are much bigger now because they've been accruing interest all along. Along the way, the employers have made every argument imaginable, and they've lost virtually every time.

We won the Skycaps tips case this week, we won against Hilltop Steakhouse in 2006, and we won against the Federalist Restaurant in December 2007. So we've won three trials, we've won many summary judgments, we won an

appeal against Northeastern University that reversed a lower court ruling and gave a summary judgment for our plaintiffs. So we've pretty much established the law in this area.

*LAS: Wouldn't it make more sense for employers to simply comply with the state tips law?*

SLR: You'd think it would, but it's mind boggling the way employers try to get around these rulings. When I started doing these cases in 2001, employers were saying, "Oh, we didn't know there was a tips law; our mistake, sorry." I was suspicious about that then, and by now those arguments are wearing thin. Every business in Massachusetts should know there's this law and they should keep their hands off their employees' tips. They've been finding more and more ingenious ways to get around it, and they're failing; in case after case we beat them.

The latest trick is that they think they can call the service charges that are automatically included in a customer's check a 15 percent "administrative charge". They think that if they change the titles of their managers, that's going to make it okay. So people who were called managers are now captains or leads or something like that, but that doesn't do it. They try implementing arbitration clauses to prevent employees from suing them in class actions. It's been a busy seven years.

*How did you get involved in this type of class action? What keeps you at it?*

SLR: Tips lawsuits are what got me involved in wage and hour law in the first place. In 2001, a waiter called me and asked, "Hey, my manager is taking some of our tips; isn't there supposed to be a law against that?" I said, "That's interesting—let me check this out." So I went and found that this tips law had been on the books since 1952, but there were no published decisions related to it. It had been flagrantly violated across the industry.

Since then, I've won more than a dozen decisions, and that's had a ripple effect. I've been getting calls from across the country, including one from California in 2004. I sent them some information, and I got a call back from them recently to say, "Hey, we thought you might like to know how this all turned out." It turned out to be the Starbuck's tips case, and they won over $100 million in damages. I said, "Wow, fabulous!"

It's really exciting to see workers coming together and realizing that they have rights and they can take action to protect them. Word gets out, someone gets a settlement, one case leads to another. I get calls from waiters in Massachusetts and now around country, saying, "Hey, I didn't know that I could do something about this."

It takes a lot of time, a lot of sweat, a lot of writing briefs, a lot of arguing before judges, but I love doing work that's sticking up for the little guy, supporting working people. I love going against large corporations who think they're above the law because of their wealth and resources, and turning the tables on them and helping workers find their voice.

It's very exciting and very powerful to bring a case that can have repercussions for many employees in a class action that helps people who live paycheck to paycheck or shift to shift, even in a non-unionized setting. This is an exciting other way that workers can stand up for themselves.

*Attorney Shannon Liss-Riordan, a graduate of Harvard College, received her JD cum laude from Harvard Law School in 1996. She has been with Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., for nearly ten years and has been a partner since 2002. In 2002 as well, she was named one of ten Lawyers of the Year by Massachusetts Lawyers Weekly for her anti-discrimination and First Amendment rights work.*